FILED 02 DEC '24 12:01 USDC-ORE

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| WAYLON PHILLIPS | ) |
| | ) |
| Plaintiff, | ) Case No. 2:24-CV-02001-AR |
| | ) |
| v. | ) |
| | ) COMPLAINT |
| J. OLSEN; T. KNAUFT; JOHN DOE; | ) AND DEMAND |
| | ) FOR JURY TRIAL |
| sued in their individual capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

*Introduction*

This is a civil rights action filed by Waylon Phillips, a state prisoner, for damages under 42 U.S.C. § 1983, alleging failure to protect in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges the torts of negligence.

*Jurisdiction*

1. The court has jurisdiction over the plaintiff's claims of violation of federal constitution rights under 42 U.S.C. §§ 1331(1) and 1343.

2. The court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367.

Page 1 of 9 Complaint for Violation of Civil Rights

Waylon Phillips
SID 12582404

*Parties*

3. The plaintiff, Waylon Phillips, was incarcerated at Eastern Oregon Correctional Institution (EOCI) during the events described in this complaint.

4. Defendant J. Olsen was a correctional sergeant employed at EOCI during the events described in this complaint. He is sued in his individual capacity.

5. Defendant John Doe was a correctional sergeant employed at EOCI during the events described in this complaint. He is sued in his individual capacity.

6. Defendant T. Knauft was a correctional officer employed at EOCI during the events described in this complaint. He is sued in his individual capacity.

7. All the defendants have acted under the color of state law at all times relevant to this complaint.

*Administrative Remedies*

8. The plaintiff has exhausted his administrative remedies concerning the events described in this complaint.

*Facts*

9. On April 28, 2023 around 3:20 pm at EOCI on unit A4, while the plaintiff was waiting in line to get hot water and ice, other inmates began harassing him because his crime is a sex offence.

10. Knauft was a few feet away at the officer desk not paying attention.

11. When it was the plaintiff's turn to use the sink, a much larger inmate cut him in line and started using the sink.

12. The plaintiff then retrieved the ice scoop from its holder and may or may not have opened the door to the ice machine.

13. The larger inmate took the ice scoop from the plaintiff knocking some things he was holding to the ground and threatened him causing the plaintiff to panic.

14. The plaintiff fled to the officer station a few feet away and asked Knauft for help.

15. Knauft brought the plaintiff into the protected area behind the desk and called Olsen on the phone and after speaking to Olsen, handed the phone to the plaintiff.

16. Olsen reassured the plaintiff he would handle the situation and made sure the plaintiff felt safe to wait in his cell while he took care of it.

17. Around 5:15 pm dinner was called and the plaintiff saw that the situation had not been taken care of and nothing had been done.

18. The plaintiff and his cellmate walked to the dining hall and placed several kytes asking for help addressed to various EOCI employees into the kyte box.

19. The plaintiff and his cellmate made it back to their cell that evening without being physically assaulted.

20. The next day around 3:20 pm, the plaintiff left his cell to get hot water and ice.

21. Observing that there was no line and that the dayroom was relatively empty the plaintiff began using the sink.

22. At that moment the group of inmates that had harassed, threatened and accosted the plaintiff the day before came back from yard and saw the plaintiff using the sink.

23. Knauft was a few feet away at the officer desk not paying attention.

24. The inmates approached the plaintiff and began intimidating and threatening him causing the plaintiff to panic.

25. The plaintiff again fled to the officer station and asked for help.

26. One aggressive inmate followed the plaintiff towards the officer station.

27. Knauft ordered the inmate him to "back off."

28. The plaintiff then began to back away down the hall away from the officer station and the other inmate.

29. The aggressive inmate advanced towards the plaintiff in a threatening manner and said to Knauft, "what are *you* going to do about it?"

30. Knauft then ordered the plaintiff to cell in and the plaintiff quickly walked to his cell and secured the door.

31. Around 5:15 pm dinner line, it was clear that the situation had not been handled, the danger remained and nothing had been done.

32. The plaintiff walked to the dining hall and asked John Doe for help.

33. John Doe assured the plaintiff he would handle it after dinner.

34. The plaintiff made it back to his cell without being assaulted.

35. At 6:15 pm two-way was called and the callouts had been posted in the dayroom. The plaintiff was required to check the callouts every day. He was also required to shower every day, which he had not done yet.

36. The plaintiff left his cell and got in line to sign the shower log.

37. While he was signing up for his shower, the inmate from earlier in the day hit the plaintiff in the head from the side, knocking him to the floor.

38. The inmate continued punching the plaintiff in an aggravated hateful flurry causing lacerations to the scalp resulting in heavy bleeding.

39. Another inmate attacked the plaintiff's cellmate at the same time.

40. The tier officer sprayed pepper spray hitting the plaintiff directly in the eyes causing temporary blindness and discomfort and ending the assault.

41. After a minute or two, multiple officers arrived and took the plaintiff to medical in a wheelchair.

42. As the plaintiff was wheeled off A4, the hostile gang of inmates on A4 laughed and cheered.

43. Medical ordered the plaintiff to be transported to the hospital.

44. The hospital performed some tests but because they were short staff were unable to diagnose the injury to the plaintiff's neck and sent him back to EOCI in a neck brace.

45. Because of the assault the plaintiff has not been able sleep properly because of pain when lying down and reoccurring nightmares.

46. The plaintiff met with behavioral health services to increase his medication for PTSD because of this attack.

47. The plaintiff has had continual headaches, neck pain and reduced movement in his neck that are a direct result of this attack.

48. As a result of the attack the plaintiff's right arm has recently stopped working properly and became painful to use. Nurse practioner Jarrell told

1   the plaintiff on October 17, 2024 that this is because of nerve problems in

2   the neck.

*Claims for Relief*

4   **49.** The acts or omissions of Olsen, Knauft and Doe were deliberately indifferent in failing to respond adequately to the foreseeable risk of inmate assault and failed to provide the plaintiff with reasonable safety and failed to prevent inmates from causing harm and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States constitution.

**50.** The acts or omissions of Olsen, Knauft and Doe were negligent in failing to respond adequately to the foreseeable risk of inmate assault and failed to provide the plaintiff with reasonable safety and failed to prevent inmates from causing harm and constituted the tort of negligence under the law of Oregon.

**51.** The actions or omissions of Olsen, Knauft and Doe were the direct and proximate cause of the above-mentioned attack on the plaintiff resulting in traumatic injuries to the head, neck and body, extreme emotional distress, lacerations to the head, physical pain and suffering, loss of movement disability in the neck, loss of function disability in the right arm,

1  nightmares, inability to sleep properly, and loss of enjoyment of playing

2  music due to the side effects of the PTSD medication.

3  **52.** WHEREFORE, the plaintiff requests damages joint and severally against

4  defendants Olsen, Knauft and Doe the following amounts:

5      **a.** Pain and suffering from April 29, 2023 until the date of this filing

6                                                             $50,000

7

    **b.** Future pain and suffering

8                                                             $300,000

9      **c.** Lacerations causing heavy bleeding requiring medical care

10                                                            $45,000

11

    **d.** Extreme emotional distress of the assault

12

                                                          $250,000

13

14      **e.** Limited neck movement disability

15                                                             $200,000

16      **f.** Limited arm movement disability

17                                                             $200,000

18      **g.** Loss of enjoyment playing music where the plaintiff has been playing

19         guitar for over 25 years and 'has chops' as they say

20                                                             $300,000

21

1      **h.** Loss of future earning capacity as a framing contractor ($65,000/

2           year for 35 years)           $2,275,000

3      **i.** Future medical expenses           $750,000

4      **j.** Punitive damages           $250,000

5      **k.** Cost of suit           $350

6      **l.** Interest           9%

                                                           ============

                                                           $4,620,350

Dated this _15_ day of _November_ 20_24_

Very Respectfully Submitted,

_/s/ Waylon Phillips_

Waylon Phillips
SID # 12582404
Deer Ridge Correctional Institution
3920 E. Ashwood Rd.
Madras, OR 97741

# CERTIFICATE OF SERVICE

**CASE NAME:** Waylon Phillips v. J. Olsen; T. Knauft; John Doe

**CASE NUMBER:** (if known) _____

COMES NOW, Waylon Phillips, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Deer Ridge Correctional Institution in Madras, Oregon

That on the 25 day of November, 2024, I personally placed in the Correctional Institution's mailing service A TRUE COPY of the following:

Complaint and Demand for Jury Trial, Order to Proceed Without Prepaying Fees or Costs, Application to Proceed In Forma Pauperis, Motion for Appointment of Counsel and Certificate of Service

I placed the above in a securely enclosed, postage prepaid envelope, to the person(s) named at the places addressed below:

Oregon State Attorney General
Oregon Dept. of Justice
1162 Court St. NE
Salem, OR 97301-4096

(Signature)

Print Name: Waylon Phillips
S.I.D. No.: 12582404
Deer Ridge Correctional Institution
3920 E Ashwood Rd.
Madras, OR 97741

Institution: DRCI
Name: Clayton Phillips
SID: 12562404
Address: 3920 E Ashwood Rd
City: Madras, OR 97741

NEOPOST
11/26/2024
US POSTAGE $002.59
ZIP 97741
041L11468314

LEGAL MAIL

US District Courts
Eugene Division
Wayne L. Morse US Courthouse
405 E. 8th Ave.
Eugene, OR
97401

Postage Paid